## VALIDITY OF TITLE ACQUIRED BY SHERIFF'S WIFE SUBSEQUENT TO SALE BY SHERIFF.

Circuit Court of Cuyahoga County.

. MINNIE MARCELLUS BRUCE v. KATE T. RYAN ET AL.

Decided, March 18, 1907.

*Fraud—Purchase by Wife of Sheriff of Property Formerly Sold at Sheriff's Sale Not Per Se Fraudulent.*

The mere fact that the wife of a sheriff, has at some subsequent time purchased property sold at a sheriff's sale does not establish the existence of fraud in the sale.

*Carr, Stearns & Chamberlain* and *A. H. Martin,* for plaintiff in error.

*Smith, Taft & Arter,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

This is an appeal by the defendants to this court from the court of common pleas. The facts are that in 1893, William R.

Ryan was the sheriff of this county, and Kate T. Ryan was his wife. An action was pending in the court of common pleas brought by the Citizens Savings & Loan Association against one Marcellus, to foreclose a mortgage, and there were several lienholders who answered in the case, which proceeded in said court of common pleas so that an order of sale of the premises described in the mortgage was made on the 18th day of May, 1893; the property was appraised at $5,000, and after due advertisement the property was sold by the sheriff on the 23d day of June, 1903, to S. L. Halle for $3,334, being two-thirds of the appraised value. On the 24th of June of the same year the order of sale was returned, and on the 27th day of June the sale was confirmed, and a deed was made on that day to Halle. On the 1st of July, 1893, Halle paid the money to the sheriff, and the deed was on the same day delivered to him. The books of the sheriff, particularly one called "Order and Sale Book," show that the money was paid by Halle to the sheriff on the 30th day of June; the sheriff entered on his book the receipt of the entire purchase money, and by his book called "Cash Execution Docket" it is shown that on the 31st day of July he paid the avails of the sale, less the taxes and his costs, to the clerk of the court, and it was receipted for by Charles A. Kuzell, deputy clerk, as shown on page 31 of that book. On the 20th day of October, 1893, Halle deeded this property to Kate T. Ryan, the wife of the sheriff, and Mrs. Ryan filed her deed for record in February, 1894.

Suit is brought here to have the sale set aside and the property declared to remain in the ownership of those to whom it belonged before the sale was made, subject to the liens thereon, of course. The evidence shows such facts as have so far been detailed, and the evidence further shows, if Mrs. Ryan is to be believed and Mr. Ryan is to be believed, that at the time of the sale of the property to Halle there was no understanding or arrangement at all that Mrs. Ryan or Mr. Ryan was to be the purchaser of the property or that it was ever to become their property. But it is said that the sale having been made by Halle to Mrs. Ryan, the consideration in the deed was $5,000, whereas, as a matter of fact nothing more was paid by Mrs. Ryan than

$3,500. It is said that this fact is a suspicious circumstance and that we ought to hold that the sheriff was the trustee of the property, and continued to be the trustee; that it was a sale made indirectly to himself, because the evidence shows that the money was really furnished by Ryan. It is true, however, that there was an arrangement between Ryan and his wife, at the time he was the sheriff, that she was to act as matron of the jail during his time as sheriff, and was to receive $1,000 per. year for her services. It appears that she was not on any pay roll and that no book account of her services was kept. She received money from her husband during this time for clothing and her other necessary expenses. But we regard this as of slight consequence, as the sale was practically a sale to Ryan. We are not satisfied that there was any arrangement between Halle and the sheriff, that the sheriff should receive the property from Halle. We think that the circumstances and the evidence are such as to justify the conclusion that the purchase by Ryan from Halle was made in good faith; that the sale to Halle was made in good faith; that it was a *bona fide* sale, that Halle bought the property and thereafter not wanting it, for Mrs. Ryan says that he stated to her where there was another party who wanted to buy it from him, sold the property to the Ryans. He had paid for it and got his deed for it, and then kept it for some little time. Mrs. Ryan says that she and her husband wanted a home. They had several children.

When Mr. Ryan got this office of sheriff one of the things he thought of was that they should purchase a home. But it is said that it is hardly to be supposed that he contemplated that he would use this property as a home, as it was not well adapted for that purpose; that they certainly could have found something more desirable. In any event they used it as a home and they lived in it more than ten years as their home.

A good many authorities have been cited to us, or rather our attention has been called to a good many authorities, including the case of *Barrington, Admr., v. Alexander*, 6 O. S., 189. In that case the administrator, under order of court, for the payment of debts, made a sale to parties who failed to pay for the property. They did not pay and the administrator arranged

with the appraiser that he should charge himself with the money as though he had received it, and he should take a deed of the property, instead of putting the property up again for sale, as he should have done, because there was no completed sale. In that case it is said in the syllabus:

"3.   The fiduciary relation of an administrator to the land of his intestate is not terminated when it is struck off and declared sold at public auction, but continues until the title of the vendee becomes perfect, by the payment of the purchase money and the delivery of the proper deed of conveyance, whereby the title passes from the heirs of the estate, unincumbered by any charge in favor of the administrator or the estate arising out of the sale."

But in the case now under consideration the purchase money had been paid, the title had passed, the sale was perfected, and there remained nothing more for the sheriff to do in connection with it.

Attention is called also to the case of *Piatt et al* v. *Longworth,* found in 27 Ohio State Reports, 159.

In that case it is shown that an arrangement was made between the executor and certain others, that the property should be sold, that he would furnish money for the purchasers and charge himself with it, as though he had received it in good faith.   He took the property which was deeded to him later by these purchasers.   It was held that he held it as a trustee; that it was not a perfected sale.

The case which seems to us to be the nearest to that which is now before us for consideration is that of *Charles Rammelsburg et al* v. *Robert Mitchell and William Lape,* 29 O. S., 22.   In that case Robert Mitchell and another, as trustees under the will of Frederick Rammelsburg, deceased, sold the interest of Rammelsburg in a St. Louis business.   Rammelsburg and Mitchell were large manufacturers of furniture in Cincinnati; they established stores in quite a number of cities, including a store in St. Louis, and Mitchell, one of the trustees under the will of Rammelsburg, sold the interest of the said Rammelsburg in the St. Louis business to one William Mitchell.   It does not appear whether there was any relationship between the trustee and the purchaser.

The sale was made in January, 1904. In February, 1904, one month later, Robert Mitchell, one of the trustees, purchased a one-sixth interest from William Mitchell in the property sold at St. Louis. The property sold at St. Louis was an undivided interest of Rammelsburg, deceased, sold to Robert Mitchell, partner of the William Mitchell, who made the purchase of Rammelsburg's interest. Robert bought from William a one-sixth interest, so that each then owned one-half of the business at St. Louis. The court found no actual fraud and no constructive fraud and upheld the sale to Robert. Robert was still, however, a trustee under the will of Rammelsburg; not for this property, but for the other property still in his hands.

We reach the conclusion here, therefore, that judgment should be rendered for the defendants, and the petition dismissed at the costs of the plaintiff.